NO. 07-08-0515-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 3, 2010

_____

JAMMIE LEE MOORE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,555-E; HONORABLE PATRICK A. PIRTLE, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Jammie Lee Moore, was convicted of possession of a controlled substance, methamphetamine, in an amount of more than 4 grams but less than 200 grams.[1] The jury found that the possession occurred within a drug free zone.[2] After finding the enhancement allegations contained within the indictment true, the jury assessed appellant's punishment at confinement in the Institutional Division of the

_____

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (Vernon Supp. 2009).

[2] See TEX. HEALTH & SAFETY CODE ANN. § 481.134(c)(1) (Vernon Supp. 2009).

Texas Department of Criminal Justice (ID-TDCJ) for 30 years. Appellant appeals contending that the evidence is legally and factually insufficient to support the conviction. We affirm.

## Factual Background

On April 6, 2007, appellant and his girlfriend, Maria Antionette Garcia (Garcia), went to spend the evening and night at a motel in Amarillo. After arriving at the motel, at the suggestion of appellant, they went to a bar in Amarillo known as "No Dogs Allowed." They went to the bar, according to Garcia, so that appellant could meet someone. Upon arriving at the bar, the person appellant was to meet was not present. Drinks were ordered and appellant walked away from the bar to talk on his cell phone. When the drinks were served, Garcia tipped the bartender a dollar from the change. This made appellant angry and words were exchanged with Garcia. Garcia got up and went outside the bar. Upon exiting the bar, appellant pushed Garcia down to the ground. Appellant then continued to yell at Garcia.

After leaving the bar, appellant and Garcia went back to the motel, where appellant continued to yell at her. Appellant was again unable to contact the person he was to meet and, in a fit of anger, kicked a table that struck Garcia. Following this, the two packed their belongings and went back to the house at 938 Dahlia Street in Amarillo. Once they returned to the house, appellant dropped Garcia off and left in his vehicle.

When Garcia thought appellant had left, she placed a 911 call and reported appellant's assault and told the 911 operator that appellant is in a green vehicle and has

2

a weapon. While Garcia was talking to the 911 operator, she heard appellant come back to the house and hung up the phone. The 911 operator called back and Garcia answered and hung the phone up, telling appellant that it was a wrong number. Garcia testified she did this because appellant was standing right in front of her and she was afraid of him.

Within a matter of moments, the Amarillo police arrived at the residence. Officer Moore testified that, as he approached the door, he heard shouting and a woman's scream. When Moore knocked on the door, Garcia came through it stating "He's inside." Officer Moore could see appellant in the hallway immediately adjacent to the living room. Moore quickly detained appellant and placed him in the backseat of his patrol car. Moore testified that he got appellant's identifying information and, during the process, appellant stated that the green car was his. Moore further testified that he saw a methamphetamine pipe sitting on a table in the living room. He also observed a small black bag sitting on the same table. Because the call was initially regarding a domestic dispute, Moore interviewed Garcia and took a statement from her. From his interview with Garcia, Moore learned that there was a gun and narcotics in the house. Garcia told Moore that the gun and narcotics belonged to appellant. Moore then collected the evidence. He found the gun in the kitchen in a zipper bag sitting on a counter. When Moore opened the black case he found on the living room table, it contained what he thought to be methamphetamine, marijuana, digital scales, plastic baggies, and batteries.

After Moore had collected the evidence, he went to his patrol car to put the evidence in the trunk of his patrol car. During this time, appellant was yelling at Moore

3

and, after he deposited the evidence in the trunk, Moore sat in the driver's seat and opened the sliding window to the back seat. At this time, appellant stated that the gun and methamphetamine found in the house did not belong to him. Appellant further stated that the drugs and gun belonged to Garcia and he was just "peddling" the dope for her. Appellant was subsequently arrested for possession of a controlled substance.

During the trial, the State produced the testimony of the Amarillo Police Department employee that took the evidence into custody and subsequently delivered it to the Department of Public Safety lab. The director of the lab testified that testing showed that the contents of the three baggies, suspected to be methamphetamine, did test positive as methamphetamine with a total weight of 63.31 grams. The larger sample was found to contain a high level of a cutting agent, whereas the two smaller samples contained substantially more pure methamphetamine. Also testifying for the State was Deputy Christy Phillips of the Potter County Sheriff's Office. As part of Phillips's duties, she supervises inmate telephone calls. Phillips testified that all calls from the Potter County Detention Center are recorded. She then identified State's exhibit 20 as a CD of telephone calls made by appellant. The exhibit was partially played for the jury. Among the subjects discussed by appellant in the telephone calls was that he had kicked a table that hurt Garcia's leg. Further, appellant acknowledged that one of the bags of contraband weighed 47 to 48 grams and that half of it was fake. Appellant also acknowledged using the scales to weigh the larger bag.

After the State presented its evidence, appellant presented the testimony of the manager of the motel where Garcia claimed that she and appellant checked in. The witness testified that the records of the motel did not reveal anyone checking in on the

4

day in question under appellant's or Garcia's name. Further, Garcia had testified that the table appellant kicked, which struck her leg, was a glass topped table. The manager stated that the motel had no glass top tables in any of the rooms of the motel.

After receiving the court's charge, the jury found appellant guilty of the offense of possession of methamphetamine of at least four grams but less than 200 grams and found that the possession occurred in a drug free zone. Subsequently, having found that both enhancement paragraphs of the indictment were true, the jury assessed appellant's punishment at confinement in ID-TDCJ for 30 years. Appellant appeals the judgment contending that the evidence is legally and factually insufficient to connect him to the methamphetamine in question. We will affirm.

### Sufficiency of the Evidence

Appellant challenges both the legal and factual sufficiency of the evidence. Therefore, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

### Standard of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency

review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Legal Sufficiency

Appellant contends that the State failed to present legally sufficient evidence linking him to the methamphetamine. To prove appellant guilty of the indicted offense, the State had to prove: 1) appellant; 2) intentionally or knowingly; 3) possessed; 4) a controlled substance, methamphetamine; 5) in an amount of four grams or more but less than 200 grams. See TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). Possession means the actual care, custody, control, or management of the methamphetamine in question. See id. § 481.002(38). To prove that appellant possessed the methamphetamine in question, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. See Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). The evidence establishing possession may be direct or circumstantial, however, it must establish that appellant's connection to the methamphetamine was more than just fortuitous. Id. at 405-06. There must be evidence, other than presence alone, that would lead the fact finder to rationally conclude beyond a reasonable doubt that appellant exercised care, custody, control, or management of the methamphetamine. See Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).

In Evans, the Texas Court of Criminal Appeals set forth a list of links that had been recognized by Texas courts. Id. at 162 n.12. The list is non-exclusive and includes the following:

> 1) the defendant's presence when a search is conducted; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the

7

accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5) whether the defendant possessed other contraband or narcotics when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of contraband; 10) whether other contraband or drug paraphernalia were present; 11) whether the defendant owned or had the right to possess the place where the drugs were found; 12) whether the place where the drugs were found was enclosed; 13) whether the defendant was found with a large amount of cash; and 14) whether the conduct of the defendant indicated a consciousness of guilt.

Id. It is not the number of links found to be present that is ultimately important, rather it is the logical force of all of the evidence, both direct and circumstantial. Id. at 162.

In reviewing the evidence before the jury, the first matter to consider is that appellant was present where the contraband was found. He was in the house approximately 10 to 15 feet from the table where the black bag containing the contraband was found. The methamphetamine was, however, not in plain view. Rather, it was located inside the closed black bag. The testimony of Garcia was that the bag belonged to appellant. Appellant's brief seems to posit that the bag could have belonged to Garcia, yet the only testimony before the jury was that it belonged to appellant. Appellant contends that he denied any possession of the bag or methamphetamine to the police officers and that they reported this in their reports. While this statement is true, it must be considered in light of the later admission that appellant made to Officer Moore. After Moore had placed the evidence in the trunk of his patrol car, he went to the front seat and opened the sliding window into the back seat, where appellant was seated, and appellant stated that the gun and the methamphetamine found in the house did not belong to him and that he was just "peddling" the dope for his girlfriend. The jury could well have viewed this as an

8

admission to possession of the methamphetamine. Also, nothing in the record reveals how appellant had knowledge of what items were found in the house other than having prior knowledge of their existence. Thus, this statement was a conscious acknowledgment of guilt and that he was aware that the matter possessed was contraband. Additionally, there are the recorded jail house telephone calls. One of the calls talks about the gun in question and another mentions that appellant knew that the larger bag of methamphetamine was half fake. The lab supervisor for the DPS testified that the larger bag was approximately one-half cutting agent. The recorded phone calls also contain an admission by appellant that he had kicked a table that struck Garcia on the leg. This was consistent with Garcia's testimony about what occurred at the motel. Finally, Officer Moore testified that appellant admitted that the green car parked at the house was his and the only set of keys found at the location were lying on the table next to the black bag where the methamphetamine was found.

As part of our analysis of the evidence, we first must remember that it is not the number of links found that is important, rather it is the logical force of the links established by the evidence that controls the ultimate issue. Id. The links to appellant may be demonstrated by direct or circumstantial evidence. Poindexter, 153 S.W.3d at 405-06. Further, when we review this evidence in the light most favorable to the verdict, as we must in a legal sufficiency review, we cannot say that the jury acted irrationally in finding appellant guilty beyond a reasonable doubt of possession of methamphetamine as charged in the indictment. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Appellant's issue regarding the legal sufficiency of the evidence is overruled.

Factual Sufficiency

We next review the evidence in a neutral manner to determine whether the jury was rationally justified in finding appellant guilty beyond a reasonable doubt. Watson, 204 S.W.3d at 415. When making a factual sufficiency review, we are mindful that the jury has already passed on the evidence and their conclusions are entitled to deference when supported by the evidence. Id. at 417. Further, we cannot simply supplant the jury's verdict because we might disagree with it, rather we must be able to state with particularity where the deficiency in the evidence to support the jury's determination exists. Id.

Appellant contends that the evidence is factually insufficient for the same reasons he claimed that the evidence was legally insufficient, a failure of the evidence to link him to the methamphetamine in question. However, the evidence is factually sufficient, even when viewed in a neutral light, for the same reasons that the evidence was legally sufficient. Id. at 415.

Appellant asserts two primary reasons that the evidence is factually insufficient and we will address those concerns. Sims, 99 S.W.3d at 603. First, appellant spends a significant portion of his brief outlining all of the various Evans factors that do not link him to the methamphetamine. Such an analysis, while correct, misses the mark. As stated in Evans, it is not the number of links that is important, rather it is the logical force of the links that are found that control the issue. Evans, 202 S.W.3d at 162. Here, there are a number of links that the evidence did not support, however, nowhere in appellant's brief is there a mention of the fact that appellant made a directly incriminating statement to Officer Moore. Likewise, there is no mention of the recorded

telephone conversations from jail that a jury could rationally believe indicate that appellant knowingly possessed the drugs on the night in question.

Second, appellant posits that the police chose to believe Garcia's statement that the drugs were not hers, even though she was seated directly in front of the drugs. However, there are two problems with appellant's contention. The evidence was that Garcia had come out the front door and did not return to the house until appellant was in custody. Therefore, this situation is not similar to the facts of Evans, where the defendant was seated in front of drugs that were in plain view when the police arrived. Further, Garcia's testimony reflected that, prior to the police's arrival, she was not seated directly in front of the black bag, rather she was on another sofa located in the living room of the house.

Finally, appellant points out a number of inconsistencies in Garcia's testimony and opines that these show the evidence to be factually insufficient. However, the position taken by appellant invites the court to ignore that the jury heard this testimony and resolved any conflicts and discrepancies against appellant. This is the jury's province and we cannot say that there is no support for their conclusion in the record. Id.

Accordingly, we find that the evidence is factually sufficient to support the jury's verdict and that the verdict is not against the great weight and preponderance of the evidence. Watson, 204 S.W.3d at 417. Appellant's issue regarding the factual sufficiency of the evidence is overruled.

Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.


Mackey K. Hancock
Justice


Do not publish.